J-S34033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.M.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.D.T., | |
| Appellant | No. 185 EDA 2017 |

Appeal from the Order Entered December 15, 2016
in the Court of Common Pleas of Montgomery County
Domestic Relations at No.: 2010-28682

| | |
|---|---|
| A.M.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.D.T., | |
| Appellant | No. 203 EDA 2017 |

Appeal from the Order Entered December 15, 2016
in the Court of Common Pleas of Montgomery County
Civil Division at No.: 2010-28682

BEFORE:  BOWES, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 07, 2017**

In these consolidated cases[1], M.D.T. (Mother) appeals two orders of

the Court of Common Pleas of Montgomery County (trial court) entered on

_____

[*] Retired Senior Judge assigned to the Superior Court.

December 15, 2016. The first order awarded A.M.H. (Father) periods of partial physical custody of I.T. (Child) in either the State of Indiana or the Commonwealth of Pennsylvania. The second order denied Mother's petition for contempt against Father. We affirm.

Mother and Father were never married, but lived together from 2005 until 2008, while Mother was the *au pair* for the children of Father and his wife, D.H. Mother became pregnant with Child during this time. Father remains married to D.H. Father lives in Fort Wayne, Indiana with D.H. and five of their children of varying ages. Mother lives in Harleysville, Pennsylvania with her fiancé.

The parties' first custody order was entered by agreement on December 23, 2010. It granted the parties joint legal custody, and awarded Mother primary physical custody and Father partial physical for one weekend every month in Pennsylvania. It also provided, "Father shall not introduce [Child] to members of his extended family until otherwise agreed or further Court Order." (Order, 12/23/10, at ¶ 5).

Father filed a petition to modify custody on June 22, 2011. On February 8, 2012, following a protracted hearing, the trial court entered an order maintaining shared legal custody and primary physical custody in Mother with Father having partial physical custody of Child one weekend per

_(Footnote Continued)_ _____

[1] This Court consolidated these appeals, *sua sponte*, on February 6, 2017.

month in Pennsylvania. It also provided that D.H. and Child were not to have a relationship due to D.H.'s history of mental illness.

Mother filed an emergency petition to modify custody and an emergency petition for contempt on August 21, 2013, in which she alleged that Father took Child to Indiana without informing her and in which she requested sole legal custody and sought restrictions on Father's visitation. Father filed answers and counterclaims on September 16, 2013, requesting a modification of the existing custody order to provide him with additional visitation during the summer. Father also filed an emergency petition for contempt on October 7, 2013, alleging that Mother unilaterally prohibited him from exercising physical custody of Child and requesting make up custodial time.

On October 18, 2013, the trial court ordered the parties to comply with its order of February 8, 2012. On January 21, 2014, the trial court issued a temporary order providing that the February 8, 2012, order was to continue with a modification allowing Father's visitation to take place in Pennsylvania, Ohio, or Indiana, provided he notified Mother.

The trial court modified the February 8, 2012, order on February 27, 2014. The modified order provided shared legal custody, with Mother maintaining primary physical custody and Father having partial physical custody of Child during spring break; a two-week period of extended custodial time during the summer in July and August; and the last weekend of each month, Friday until Sunday, during the months Father does not have

an extended visit scheduled with Child. Additionally, the trial court ordered that Child may only be in the presence of D.H. when another adult is present; that Child shall never be left unsupervised with D.H. under any circumstances; and that, should Child ever be permitted to spend unsupervised time with D.H., Father will forfeit his rights to visitation in Indiana.

Father filed a petition for contempt on March 22, 2016, alleging that Mother would not allow him to pick Child up during his scheduled spring break visitation. Mother filed a petition to modify custody and a petition for contempt on May 5, 2016. Mother's petition to modify sought sole legal custody of Child and a change in the visitation schedule. Mother's petition for contempt alleged that Father left Child alone with D.H. with no other adult present to supervise, in violation of the February 27, 2014 order.

Father filed a petition to modify custody on June 20, 2016, seeking extended visits in the summer, an additional winter break, and for the trial court to lift the restrictions concerning D.H. imposed in the February 27, 2014, order. Mother filed an answer and counterclaim for contempt on June 21, 2016. Father filed an emergency petition for special relief on August 2, 2016, alleging that Mother was denying his Indiana visit. Mother filed an answer and response on August 3, 2016. The trial court resolved Father's petition for special relief and Mother's answer in an order entered August 3, 2016.

The trial court held a hearing on the remaining pleadings on November 29, 2016, and entered the orders appealed from on December 15, 2016. Mother filed her notices of appeal and statements of errors complained of on appeal on January 5, 2017. *See* Pa.R.A.P. 1925(a)(2)(i).[2]

Mother presents the following issues for our review:

1. [Whether] [t]he [trial court] [] err[ed] and abuse[d] [its] discretion in granting joint legal custody to [Father], as said determination was not supported by the evidence presented[?]

2. [Whether] [t]he [trial court] [] err[ed] and abuse[d] [its] discretion in granting [Father] partial physical custody in Indiana, as said determination was not supported by the evidence presented[?]

3. [Whether] [t]he [trial court] [] err[ed] and abuse[d] [its] discretion in allowing for [D.H.] to be in the presence of [Child], thus endangering [Child][?]

4. [Whether] [t]he [trial court's] allowance of [D.H.] in the presence of [Child], even supervised, is not in the best interests or welfare of [Child][?]

5. [Whether] [t]he [trial court] [] err[ed] and abuse[d] [its] discretion in applying the custody factors found at 23 Pa.C.S.A. Section 5328 in determining the best interests of [Child][?]

6. [Whether] [t]he [trial court] [] err[ed] as a matter of law in denying the contempt petition of [Mother] filed on May 5, 2016, as the [trial court] did find in its Findings of Facts, at factor 12, that [Father] was in violation of the prior court orders[?]

(Mother's Brief, at 4) (unnecessary capitalization omitted).

_____

[2] The trial court entered a Rule 1925(a) opinion on February 10, 2017, referring this Court to its Findings of Fact issued on December 15, 2016, and to its supplementary opinion, also entered on February 10, 2017, for the reasons for its orders. *See* Pa.R.A.P. 1925(a)(2)(ii).

We have examined the opinions and Findings of Fact entered by the trial court on February 10, 2017 and December 15, 2016, in light of the record in this matter, and we are satisfied that, taken together, they are a complete and correct analysis of this case.[3]  Accordingly, we affirm the orders Mother appeals from on the basis of the trial court's opinions and Findings of Fact.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2017

---

[3] We note that Mother's brief is deficient because, although she purports to raise six distinct issues on appeal, she fails to develop them separately as such in the argument section of her brief, in violation of our appellate rules. (**See** Mother's Brief, at 4, 6-12 (combining six issues into two overarching issues)); **see also** Pa.R.A.P. 2116(a), 2119(a); **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.") (citations omitted).  Although we could find waiver of most of Mother's issues on this basis, **see** Pa.R.A.P. 2101, we decline to do so, in the interest of judicial economy.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION



:  **Common Pleas No: 2010-28682**

v.  :

:  **Superior Court No. 185 EDA 2017**

:

## O P I N I O N

**AND NOW,** this 10th day of February 2017, upon receipt of the Defendant's Notice of Appeal (filed January 5, 2017), the undersigned directs the Pennsylvania Superior Court to its **"FINDING OF FACT"** issued on December 15, 2016 as the location where the Court detailed its analysis of the Custody Factors required by 23 Pa. C.S. 5327 and placed the reasons for its Custody Order on the record. The attached Opinion shall supplement this Court's previously issued **"Findings of Fact"**.

BY THE COURT:

RISA VETRI FERMAN, J.

2010-28682-0126  2/10/2017 3:07 PM  # 11158559
Opinion
Rcpt#Z3038292  Fee:$0.00
Mark Levy - MontCo Prothonotary

Copies to:
~~[redacted]~~ Pro Se Plaintiff
Colleen F. Consolo, Esquire for Defendant
Court Administration
Chambers

Secretary

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

▊▊▊▊▊▊▊▊▊▊▊ :
(Father/Appellee) :
:
:
:
:
:
:
▊▊▊▊▊▊▊▊ :
:
(Mother/Appellant) :
:

**No. 2010-28682**

**Superior Court No. 168 EDA 2017**

2010-28682-0125  2/10/2017 2:59 PM  # 11158778
Opinion
Rcpt#Z3038107  Fee:$0.00
Mark Levy - MontCo Prothonotary

## OPINION

FERMAN, J.                                    **February 10, 2017**

## I. INTRODUCTION

Appellant, ▊▊▊▊▊▊▊▊ ("Mother"), appeals to the Superior Court of Pennsylvania from the undersigned's Orders dated December 15, 2016 pertaining to Custody and Contempt. On January 5, 2017, Appellant timely filed both the Notice of Appeal and a Concise Statement of Errors Complained of on Appeal Children's Fast Track Appeal.[1]

After a one-day trial on November 29, 2016, the undersigned issued three separate Court Orders. The first Court Order was the Custody Order resolving both Father's and Mother's Petitions to Modify Custody.[2] The Custody Order awarded (1) shared legal custody to Mother and Father; (2) primary physical custody to Mother; and (3) partial physical custody to Father. The second Court Order denied both Father's and Mother's Petitions for Contempt.[3] The third Court Order contained the undersigned's "Findings of Fact."[4]

---

[1] See docket sequence numbers 117-120.
[2] See docket sequence number 114.
[3] See docket sequence number 115.
[4] See docket sequence number 116.

## II. FACTS AND PROCEDURAL HISTORY

The undersigned directs the Superior Court of Pennsylvania to its "Findings of Fact" filed December 15, 2016 where the *Facts and Procedural History* of this case was detailed.

## III. ISSUES

Overall, Appellant raises six (6) issues in her Concise Statement of Errors Complained of on Appeal.

(1) The Court did Err and Abuse its discretion in granting joint legal custody to [Father], as said determination was not supported by the evidence presented.

(2) The Court did Err and Abuse its discretion in granting [Father] partial physical custody in Indiana, as said determination was not supported by the evidence presented.

(3) The Court did Err and Abuse its discretion in allowing for [Father's] Wife to be in the presence of the minor child, thus endangering the child.

(4) The Court's allowance of [Father's] Wife in the presence of the child, even supervised, is not in the best interests or welfare of the minor child.

(5) The Court did Err and Abuse its discretion in applying the custody factors found at 23 Pa.C.S.A. Section 5328 in determining the best interests of the child.

(6) The Court did Err as a Matter of Law in denying the Contempt petition of [Mother] filed on May 5, 2016, as the Court did find in its Findings of Fact, at factor 12, that [Father] was in violation of the prior Court Orders.

Concerning issues two (2), three (3), four (4), and five (5), the undersigned directs the Superior Court of Pennsylvania to its "Findings of Fact" dated December 15, 2016 where the reasons for its Custody Order dated December 15, 2016 may be found. This Opinion supplements the Court's "Findings of Fact" as it pertains to issues one (1) Legal Custody and six (6) Contempt.

## IV. DISCUSSION

### *(1) The Court did not err or abuse its discretion in granting joint legal custody to Father.*

The Appellate Court's standard of review of child custody issues is an abuse of discretion. An abuse of discretion "occurs if, in reaching its conclusion, [the] trial court overrides or misapplies the law or exercises judgment that is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa.Super.2009).

Legal Custody is the "right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S.A. § 5322. Shared legal custody "is the right of more than one individual to legal custody of the child." *Id.*

In determining whether to award shared legal custody, the trial court must consider four factors. *Yates v. Yates*, 963 A.2d 535, 542 (Pa. Super. Ct. 2008) (See, *Wiseman v. Wall*, 718 A.2d 844, 848 (Pa.Super.1998). With respect to the shared legal custody factors:

*(1) Whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children.*

Both parents have had shared legal custody for most of ▮▮ life. There is considerable geographic distance between Mother and Father. Father lives in Indiana and Mother lives in Pennsylvanian. As a result, Mother has been ▮▮ primary physical custodian and has been responsible for a majority of the child rearing responsibilities since his birth. Father, however, has always been willing to cooperate with Mother and assist in legal decision-making. There is no question that Father is capable of making reasonable child rearing decisions, as he has demonstrated during the limited periods of time ▮▮ has spent with him. Due to the distance between the parties, Father has deferred day to day decisions to Mother, as long as he is notified. Lastly, both Mother and Father are able to provide love and care for ▮▮

*(2) Whether both parents evidence a continuing desire for active involvement in the child's life.*

It is clear from the evidence of record that both Mother and Father have a continuing desire for active involvement in ▮▮ life. In fact, the essence of Father's contempt petition, and his testimony regarding said petition, was his inability to communicate with his son regularly and the frustration this caused him. Mother, as the primary caretaker, is actively involved in the child's life.

*(3) Whether the child recognizes both parents as a source of security and love.*

The Court was not asked to interview ███. As such, there is no direct evidence from ███ pertaining to this factor. However, both Mother and Father testified that ███ loves both parents and knows that both parents love and care for him. The Court also finds that ███ enjoys the time he spends with Father's family and his other siblings in Indiana.

*(4) Whether a minimal degree of cooperation between the parents is possible.*

"A minimal degree of cooperation between parents, which is [a] factor trial court must consider in determining whether to award parents shared custody of children, does not translate into a requirement that the parents have an amicable relationship; although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor." *B.C.S. v. J.A.S.*, 2010 A.2d 600 (2010).

An award of shared legal custody is appropriate even if the parties have shown a minimal ability to cooperate; however, an award of shared legal custody is inappropriate where the parties both refuse to communicate with each other regarding the child. *Brown v. Eastburn*, 506 A.2d 449 (1986); See, *DeNillo v. DeNillo*, 535 A.2d 200 (1987).

Here, Mother is seeking sole legal custody because, according to Mother, the parties have a high conflict relationship, are unable to discuss the child or make joint decisions, and Father is not involved in ███ life. The Court finds Mother's position contrary to the evidence presented at trial.

Mother testified that she "sometimes" gives Father information regarding ███ appointments. When asked to explain, Mother testified that when there is a major issue she notifies Father. There was also evidence presented by both Mother and Father pertaining to their communication on Our Family Wizard, which is extensive. There was some testimony by Mother regarding Father not paying his portion of a fee for one of ███ activities; however, child support was not at issue before the Court at that time. There was no evidence presented suggesting Father was unwilling or unable to cooperate with Mother or to be involved in ███ life. Additionally, Mother failed to present any evidence establishing that Father fails to communicate at all regarding ███ or withholds consent.

The evidence presented to the Court established that Father wants to be involved as much as possible considering the distance between him and ███ but that for the most part, he allows Mother to make the day to day decisions

for ▮▮. The primary source of conflict for these parents is ▮▮'s exposure to Father's wife, which three courts have already ruled should be supervised.

Based on the evidence presented, this Court concluded that both parents exceed the requisite minimal ability to cooperate. They have demonstrated their ability to communicate, to cooperate and to share responsibilities over the course of ▮▮ life. Their conflict centers around one significant area of dispute, which has been resolved by the Court.

In conclusion, based upon the evidence of record, the Court concluded that: (1) both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) both parents evidenced a continuing desire for active involvement in the child's life; (3) that the child recognizes both parents as a source of security and love; and (4) that a minimal degree of cooperation between the parents is possible.

Based on the foregoing reasons, the Court's Custody Order dated December 15, 2016, awarding shared legal custody, should be **AFFIRMED**.

### *(2) The Court did not err as a matter of law in denying the Contempt petition of Mother filed May 5, 2016.*

The Appellate Court's standard of review of child custody issues is an abuse of discretion. In reviewing a trial court's finding on a contempt petition, the Appellate Court is "limited to determining whether the trial court committed a clear abuse of discretion." *Flannery v. Iberti*, 763 A.2d 927, 929 (Pa.Super.2000)(citations omitted). The Appellate Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Id.* An abuse of discretion "occurs if, in reaching its conclusion, [the] trial court overrides or misapplies the law or exercises judgment that is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa.Super.2009).

"A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt." 23 Pa.C.S.A. § 5323(g)(1). The complaining party has the burden of proving by a preponderance of the evidence that a party violated a court order. *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (1995). A mere showing of non-compliance is insufficient to prove contempt. *Id.*

The complaining party must prove the following three distinct elements: "(1) that the contemnor had notice of the specific order or decree which is alleged to have [been] disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent."

*Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006). Further, the order at issue must have been "definite, clear, and specific— leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Marian Shop Inc. v. Baird*, 670 A.2d 671, 673 (1996). Lastly, "the order must be strictly construed, and any ambiguities in the order must be read in favor of the contemnor." *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa. Super. 2004).

Here, Mother filed a Petition for Contempt on May 5, 2016, averring, *inter alia*, that during an "August of 2015 visit [Father] left ▮▮▮▮▮▮▮ with ▮▮▮▮▮▮▮ [Father's wife] with no other adult present" in violation of the February 27, 2014 Court Order. The February 27, 2014 Court Order states:

> "Father's visitations may take place at his home in Indiana. Child may have contact with Father's six other children. Child may only be in the presence of ▮▮▮▮▮▮▮ when another adult is present. Child shall never be left unsupervised with ▮▮▮▮ ▮▮▮▮ under any circumstances. Should Child ever be permitted to spend unsupervised time with ▮▮▮▮▮▮▮, Father will forfeit his rights to visitations in Indiana."

The parties were before the undersigned for a one-day trial on November 29, 2016, on all outstanding petitions. Both Mother and Father presented testimonial and documentary evidence pertaining to Father's alleged contempt.

Mother presented Steven Gerber, a private investigator from Indiana hired by Mother to conduct surveillance of Father and his family. Specifically, Mother was investigating whether ▮▮▮ was being left unsupervised with Father's wife, ▮▮▮▮▮▮▮. Mr. Gerber conducted surveillance on August 11, 2015 for a six-hour period of time. Mr. Gerber testified that all of his surveillance was done outside the home and that he was unaware of what adult, if any, was inside the home. (N.T. 11/29/16 pages 6-23).

During the six-hour period, Mr. Gerber testified that he observed ▮▮▮▮▮▮▮ and ▮▮▮, the child at issue, outside the residence without another adult for at least half an hour. His report established that Father was coming and going from the residence most of the morning with his wife and other children, including ▮▮▮ The report further established that at approximately 11:35 am ▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮ and a sibling were all together on the front porch of the house or in the front yard. Mr. Gerber approached ▮▮▮▮▮▮▮ to ask whether Father is home to which she

responded, no. Mr. Gerber's report concludes at 12:05 pm. (See Exhibit C); (N.T. 11/29/16 pages 6-23).

Father, in rebuttal, presented his father, ████████████ Mr. ██████ testified that he was inside Father's home on August 11, 2015 – the date Mr. Gerber conducted his surveillance – in the basement. Mr.██████ further testified that he stays at Father's home "quite a bit." On the date in question, Mr. ██████ testified that Father told him he was leaving the home and also told him when he returned home. Additionally, Mr. ██████ testified that he was advised that ███ was not to be left alone with ██████████. (N.T 11/29/16 pages 100-101). On cross-examination, Mr.██████ testified that██████████ was out of his line of sight for approximately an hour, but he was in the residence.

The burden is on Mother, the complaining party, to prove by a preponderance of the evidence that Father violated the court order. Mother must prove three distinct elements: (1) that the contemnor, meaning Father, had notice of the specific order or decree which is alleged to have been disobeyed; (2) that the act constituting the contemnor's violation was volitional, meaning willful; and (3) that Father acted with wrongful intent.

At trial, Mother's counsel argued that the supervision provision in the February 27, 2014 Order required that Father's Wife to be in the "line of sight" of another adult at all times while in the presence of██[5] The February 27, 2014 Order did not, however, specifically define the supervision provision. The Court Order stated: "Child may only be in the presence of ████████ly when another adult is present. Child shall never be left unsupervised with██████ ████y under any circumstances." The Court Order did not define how the supervision should be conducted. The Court believed the testimony of ███████ ████y and found that his presence in the home on the date in question was to serve as the supervisor. He was aware of the requirement that ██████████ not be left alone with the child and he remained at the home for this purpose.

Mother asked this Court to find that Father was in contempt by virtue of the fact that for a brief window,█████████████was with ███ and another child outside, in public, and the supervisor was inside. This Court finds that the supervision requirement was not definite, clear, and specific as to the prohibited conduct. What is considered "present"? What is considered "unsupervised"? The evidence established that Father provided for a supervisor and that person understood that███ was not to be left alone with████████ ██████. This Court found that the child's presence outside with Mrs. ██████ with another adult in the home satisfied the supervision provision of the Court Order as it was written. The Court refused to impose new conditions not clearly defined in the prior Court Order.

---

[5] N.T. 11/29/16 pages 99-100.

Based upon the evidence of record, the Court concluded that Father did not willfully violate the February 27, 2014 Court Order. From the evidence presented it is apparent that Father believed he was following the Court Order by having his Father – specifically on August 11, 2015, the date in question – present at his home while Father was absent. Moreover, Paternal Grandfather was notified that the child was not to be left alone. The Court finds that Father complied with the Order as written. Because of this uncertainty, the order must be read in favor of the contemnor." *In re Contempt of Cullen*, 849 A.2d 1207, 1210 (Pa. Super. 2004).

After the trial, the Court entered a new Custody Order defining the supervision provision. Knowing there were ambiguities in the February 27, 2014 Court Order, the undersigned specified the steps Father should take to be in compliance with the supervision provision of the Custody Order The December 15, 2016, Custody Order states:

> During Father's custodial time, the Child may not be in the presence of ████████ ██████ (Father's wife) unsupervised. Father shall ensure that another responsible adult is designated as the supervisor of ████████ ███████ presence with the child. **The supervisor shall be (1) physically present at all times in any private location, (2) shall be specifically aware of his/her responsibility to supervise the contact and (3) shall be in a location where contact with ██████████ █████ and the child may be consistently monitored. This provision does not require constant visual surveillance. The supervisor may be a family member, neighbor, friend or hired supervisor.** Should Father fail to provide a supervisor for the child and ████████ █████, Mother may request an Emergency Order that future visits in the State of Indiana be suspended. This provision is not modifiable by the parties.

(emphasis added). In conclusion, the Court found the February 27, 2014 Order to be ambiguous causing Father's uncertainty as to what conduct was prohibited. As a result, the Court concluded that Father did not willfully violate the Court's Order and held that he was not in contempt.

Based on the foregoing reasons, the Court's Order dated December 15, 2016, denying Mother's Petition for Contempt should be **AFFIRMED**.

BY THE COURT:

_____

RISA VETRI FERMAN, J.

Copies to:
████████████, Pro Se Plaintiff
Colleen F. Consolo, Esquire for Defendant
Court Administration
Chambers

Circulated 06/28/2017 10:52 AM

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### FAMILY LAW DIVISION



(Father)

v.



(Mother)

2010-28682-0116  12/15/2016 1:21 PM  # 11085864
Order
Rcpt#Z2975535  Fee:$0.00
Mark Levy - MontCo Prothonotary

No. 2010-28682

IN: Seq. 68 (3/22/16) Plaintiff's Emergency Petition for Contempt;
Seq. 73 (5/5/16) Defendant's Petition to Modify;
Seq. 78 (5/5/16) Defendant's Petition for Contempt;
Seq. 87 (6/20/16) Plaintiff's Petition to Modify;
Seq. 88 (6/21/16) Defendant's Answer and Counterclaim;
Seq. 98 (8/2/16) Plaintiff's Emergency Petition for Special Relief;
Seq. 100 (8/3/16) Defendant's Answer and Response;

## FINDINGS OF FACT

**AND NOW**, this 15th day of December 2016, after a one-day protracted hearing on November 29, 2016, the Court issues the following **FINDINGS OF FACT** pursuant to 23 Pa.C.S.A. Section 5328(a).

## FACTS AND PROCEDURAL HISTORY

▓▓▓▓▓▓▓▓ is the Father of minor child ▓▓▓▓▓▓▓ ("▓▓▓"), age seven (7), born October ▓▓ 2009. ▓▓▓▓▓▓▓▓▓▓ is the Mother of minor child ▓▓▓ Mother and Father were never married. Mother and Father lived together from 2005-2008 while Mother was the au pair for the children of Father and his wife, ▓▓▓▓▓▓▓▓. Mother became pregnant with ▓▓▓ as a result of this affair. Father remained married to his wife.

Father is (44) years old (DOB 12/▓▓/1972) and currently lives in Fort Wayne, Indiana with his wife, ▓▓▓▓▓▓▓▓▓, and five children of varying ages.

Mother is 29 years old (DOB 6/██/1987) and currently lives in Harleysville, Pa with her fiancé, ████████ (DOB 4/██ 1978), and when she visits, his daughter.

The parties' first Custody Order was entered November 16, 2010 by agreement. It granted the parties joint legal custody and awarded Mother primary physical custody and directed that Father shall have partial physical custody of ██ for one weekend every month in Pennsylvania. Additionally, the parties agreed that "Father shall not introduce ██ to members of his extended family until otherwise agreed or further Court Order."

Father filed a Petition to Modify on June 22, 2011. On February 8, 2012, following a protracted hearing, Judge Richard P. Haaz entered an Order on the record maintaining shared legal custody and primary physical custody to Mother, and directed that Father shall have partial physical custody of ██ one weekend per month in Pennsylvania. Judge Haaz further ordered that the parties shall utilize Our Family Wizard for all future communications pertaining to ██ Noteworthy were Judge Haaz's comments on the record providing that Mrs. ██████ and ██ were not to have a relationship due to Mrs. ██████ mental health history.

Mother filed an Emergency Petition to Modify Custody and an Emergency Petition for Contempt on August 21, 2013. Mother's Petition to Modify Custody requested sole legal custody and restrictions placed on Father's visitation. Mother's Petition for Contempt alleged, *inter alia*, that Father took ██ to Indiana without informing Mother. Father filed multiple Answers and Counterclaims on September 16, 2013 requesting, *inter alia*, to modify the existing Custody Order to provide Father with additional visitation time during the summer. Father also filed an Emergency Petition for Contempt on October 7, 2013, alleging that Mother unilaterally prohibited him from exercising physical custody of ██ and requested make up custodial time.

In response, on October 18, 2013, Judge Garrett D. Page ordered the parties to fully comply with Judge Haaz's Order of February 8, 2012. Subsequently, Judge Gail A. Weilheimer issued a Temporary Order on January 21, 2014 in which the custody arrangement mandated by the February 8, 2012 Order was to continue with a modification allowing Father's visitation to take place in Pennsylvania, Ohio, or Indiana provided Mother is notified via Our Family Wizard.

Eventually the February 8, 2012 Order was modified. On February 27, 2014, Judge Weilheimer ordered that the parties maintain shared legal custody, with Mother maintaining primary physical custody and Father

maintaining partial physical custody of ▆ during Spring Break, a two-week period of extended custodial time during the summer in July and August, and the last weekend of each month Friday until Sunday during the months Father does not have an extended visit scheduled with ▆. Additionally, the Court ordered that ▆ may only be in the presence of ▆▆▆▆, Father's wife, when another adult is present; that ▆ shall never be left unsupervised with Father's wife under any circumstances; and that should ▆ ever be permitted to spend unsupervised time with Father's wife, Father will forfeit his rights to visitations in Indiana.

Father filed a Petition for Contempt on March 22, 2016 alleging, *inter alia*, that Mother would not allow him to pick-up ▆ during his scheduled Spring Break visitation. Mother filed a Petition to Modify and a Petition for Contempt on May 5, 2016. Mother's Petition to Modify sought sole legal custody of ▆ and a change in the visitation schedule. Mother's Petition for Contempt alleged, *inter alia*, that Father left ▆ alone with Father's wife, ▆▆▆▆ with no other adult present to supervise, in violation of the February 27, 2014 Court Order.

Father filed a Petition to Modify on June 20, 2016 seeking, *inter alia*, extended visits in the summer, an additional winter break, and for the Court to lift the restrictions concerning ▆▆▆▆ imposed by Judge Weilheimer's February 27, 2014 Custody Order. Mother filed an Answer and Counterclaim for Contempt on June 21, 2016. Lastly, Father filed an Emergency Petition for Special Relief on August 2, 2016 alleging, *inter alia*, that Mother was denying his Indiana visit. Mother filed an Answer and Response on August 3, 2016.

The undersigned resolved Father's Petition for Special Relief and Mother's Answer via Court Order dated August 3, 2016. This Court held a protracted hearing on November 29, 2016 to resolve all outstanding custody matters.

## CUSTODY ANALYSIS

The Court must analyze the general custody factors under the Custody Act, 23 Pa.C.S. Section 5328, to determine what is in the best interest of Ian. With respect to the general custody factors:

**1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

The Court did not observe any evidence that either Father or Mother discourages contact with the other. Mother's main concern was ███s safety related to Father's wife ███████████, who has an extensive history of violence and mental health challenges. Father testified that he is sometimes unable to speak with ███ on the phone. The Court, however, concluded that issue could be resolved by specifying a time for the call to take place.

The Court finds Factor One is balanced between the parties.

**2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can provide adequate physical safeguards and supervision of the child.**

Mother and Father have had abuse issues in the past such that Mother filed a Protection from Abuse Petition on July 26, 2011 against Father. A Temporary Protection from Abuse Order was entered on July 26, 2011. That Temporary Protection from Abuse Order was vacated and Mother's Protection from Abuse Petition was stricken after Mother requested leave to withdraw her Protection from Abuse Petition. A Civil Stay Away Order was entered instead on August 5, 2011 by Judge Kelly Wall.

Of the upmost concern to the Court, however, is the history of violence between Father and Father's wife, and Father's wife extensive mental health history. Father and Mrs. ███████ have had an on again and off again relationship that has included multiple restraining orders, police contacts, and the involuntary civil commitment of Father's wife. Most recently, Father filed a Protection from Abuse Petition against Mrs. ███████ in March of 2016 alleging that she caused him physical harm and requested that she be evicted from the home and prohibited from committing, or threatening to commit, acts of domestic or family violence against Father's children. In his Petition, Father wrote "Please keep ███████ from my work, my house, my office and my other children's mothers." In addition, he requested that ███████████████ contact with her own children be supervised. Of note, Father failed to notify the Court of this filing, despite his multiple Petitions and Answers, until his testimony on November 29, 2016. Notwithstanding his claims under oath in multiple court filings, Father continually claimed that Mrs. ███████ was "sweet" and would never hurt ███. The Court is less convinced than Father of the accuracy of this statement.

That was not Father's first time filing a Protection from Abuse Petition against Mrs. ███████ In 2007, an Order for Protection was entered protecting

Father and his children from Mrs. ████ The Court at that time found Mrs. ████ a credible threat to the safety of Father and members of his household. Additionally, Mother filed a Protection from Abuse Petition and was granted a Civil Stay Away Order in 2011 after Mrs. ████ was at Mother's apartment making threats and harassing her, and would not leave.

This Court concludes that Mrs. ████ poses a continued risk of harm to ██ Due to Mrs. ████ instability, the fact that ██ was conceived during an affair between her husband and the babysitter, her extensive history of violence and mental health instability, the Court concludes that ████ safety can best be ensured by providing a supervisor for any contact Mrs. ████ might have with ████ The restrictions imposed by prior Courts shall remain in effect, subject to some clarifications.

Father did not present any evidence regarding present or past abuse committed by Mother.

The Court finds Factor Two heavily favors Mother.

## 3. The parental duties performed by each party on behalf of the child.

Mother has been ████'s primary caretaker since birth and has performed all the parental duties on behalf of ████ Due to the eleven (11) hour distance between the parties, Father has had minimal time with ████ However, Father is able to perform the necessary parental duties during the brief periods of time ████ is visiting.

The Court finds Factor Three favors Mother.

## 4. The need for stability and continuity in the child's education, family life and community life.

There is no question that ████ needs stability in his life. Living with Mother primarily and visiting with Father occasionally gives ████ the stability he needs. Since ████ birth, he has lived with Mother. Neither party is requesting to modify the award of physical custody.

The Court finds Factor Four favors Mother.

## 5. The availability of extended family.

Mother lives with her fiancé and his daughter in Harleysville, Pa. Father lives in Fort Wayne, Indiana with his wife and five children. Mother's family

also lives in Fort Wayne, Indiana. Father has extended family also in the Fort Wayne, Indiana area. Mother's fiancé's family lives in Connecticut.

The Court finds Factor Five is balanced between the parties.

**6. The child's sibling relationships.**

████ has five siblings that live with his Father in Fort Wayne, Indiana. ████ sees his siblings while visiting Father. Mother's fiancé has a daughter whom ████ considers a sibling. Evidence presented demonstrated that ████ was close with all of his siblings.

The Court finds Factor Six is balanced between the parties.

**7. The well-reasoned preference of the child, based on the child's maturity and judgement.**

The Court was not asked to interview ████ As such, there is no evidence pertaining to this factor.

**8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

Mother testified that she believes Father is teaching ████ to call her, ████ instead of "Mom"; that ████ is questioning Mother about the court proceedings due to Father; that ████ is telling Mother she will get in trouble if she does certain things due to Father; and that the child comes home angry and aggressive after visits with Father.

There was no evidence presented to suggest Mother has engaged in any conduct to turn the child against Father.

The Court finds Factor Eight balanced between the parties.

**9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

Father and Mother are both able to maintain a loving, stable, consistent and nurturing relationship with ████ However, the Court has concerns about Father and Mrs. ████ unstable relationship and Mrs. ████ mental stability. As recently as March of 2016, Father had filed for divorce and filed a Protection from Abuse Petition. Additionally, as discussed above, the Court

finds that Mrs. ▆▆▆ poses a continued risk of harm to the child that Father persistently refuses to acknowledge. ▆▆▆s safety is of paramount importance to this Court and the risk of harm can be avoided through appropriate supervision of ▆▆ and ▆▆▆▆▆.

The Court finds Factor Nine favors Mother and the Court finds that Mother is more likely to maintain a loving, stable, consistent and nurturing relationship.

**10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Mother is more likely to attend to the daily physical, emotional, developmental, educational and special needs of ▆▆ by the simple fact she is ▆▆ primary caretaker on a day to day basis. When ▆▆ is in Father's custody, Father is able to attend to ▆▆ daily needs. Father lives in another state preventing him from attending the daily needs of ▆▆

The Court finds Factor Ten is balanced between the parties.

**11. The proximity of the residence to the parties.**

Mother and Father are eleven (11) hours apart. Mother lives in Pennsylvania and Father lives in Indiana.

The Court finds Factor Eleven is balanced between the parties.

**12. Each party's availability to care for the child or ability to make appropriate child care arrangements.**

Mother is a teacher for toddlers in a preschool and works approximately ten minutes away from her home. When necessary, Mother is able to take ▆▆ to work with her. In the alternative, her fiancé works from home most days and is able to watch ▆▆ Father on the other hand presented evidence that he brings ▆▆to work with him or has Mrs. ▆▆▆y watch▆▆which is a violation of prior Court Orders. Based on the Court's stated concerns related to Mrs. ▆▆▆Father will be required to ensure third party supervision of Mrs. ▆▆▆ contact with▆▆

The Court finds Factor Twelve favors Mother.

**13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.**

There is a high level of conflict between the parties. The parties are unable to communicate directly, which is why the parties have been ordered to communicate through Our Family Wizard. Mother also has a high level of understandable distrust of Mrs. ████. Most of the parties' conflict arises due to Mrs. ████s continued involvement with ███ and Father's continued attempts to remove the restrictions in place.

The Court finds Factor Thirteen favors Mother.

## 14. The history of drug or alcohol abuse of a party or member of a party's household.

Both Mother and Father have a history of drug and alcohol abuse. Mother testified that she used drugs as a teenager but stopped entirely when she became pregnant. Mother testified that she used drugs with Father during their affair. Mother also testified that Father has a history of alcohol abuse. Mother's fiancé does not have a history of drug or alcohol abuse. There was no evidence presented regarding Mrs. ████ use of drugs and alcohol.

The Court finds Factor Fourteen is balanced between the parties.

## 15. The mental and physical conditions of a party or member of a party's household.

Father's wife, Mrs. ████, has an extensive mental health history. Mrs. ████ has a history of violent outbursts and fits of unstable behaviors. Mrs. ████ also has a history of involuntary civil mental health commitments and Protection from Abuse Petitions by Father. It is difficult for the Court to conclude what actually happened leading up to Mrs. ████ involuntary civil mental health commitments because no documentary evidence was presented; only testimonial evidence was presented to the Court. However, based on the testimonial evidence presented, Mrs. ████ has fits of rage and violence, fails to always take her medications, consumes alcohol mixed with her medication, has attempted suicide in the past, and has threatened to harm her family. Father alleged as much regarding Mrs. ████ mental health in his most recent Protection from Abuse Petition filed in March of 2016 and his past Protection from Abuse Petition filed in 2007.

Mother testified that she was sexual assaulted as a child and suffered from PTSD. She commenced mental health treatment at the age of four or five. There was no evidence presented regarding Father's mental health.

Due to Mrs. ▓▓▓▓ significant mental health history and history of violence, the Court finds Factor Fifteen strongly favors Mother.

## 16. Any other relevant factor.

The Court found Father deceitful during his testimony. Father admitted filing a Protection from Abuse Petition against his wife, Mrs. ▓▓▓ on March 7, 2016 and alleged, under penalty of perjury, that Mrs. ▓▓▓ is bi-polar and attacked him while he was on the phone. He further testified before this Court that he exaggerated the facts in the petition to accomplish a desired outcome. This Court finds Father either lied in his petition or lied to the Court. Moreover, Father testified that he exaggerated in filing earlier petitions against his wife to either ensure her commitment or to ensure he could keep her out of the house while he conducted his affair. This Court finds Father was not credible or reliable in the testimony he provided and entirely dismisses his opinions about the risk of harm posed by Mrs. ▓▓▓, as well as other issues.

The Court found Mother to be credible and finds Factor Sixteen to weigh entirely in favor of Mother.

Based upon the overwhelming evidence presented at trial, the Court concludes that ▓▓▓ best interests and safety will be secured by maintaining the prior Custody Order with minor modifications. The past provisions requiring ▓▓▓▓▓ to only have supervised contact with ▓▓ shall remain in effect. Should Father disregard or circumvent this provision again, the Court will consider a complete cessation of all custodial time in the State of Indiana.

BY THE COURT

_RISA VETRI FERMAN, J._

Copies sent via first class mail to:

▓▓▓▓▓ – Pro Se Plaintiff
Colleen F. Consolo – Defendant's Attorney
Court Administration – Family Division

_____
Judicial Secretary